## CHIN BOW HON v. UNITED STATES.
### No. 5579.

Circuit Court of Appeals, Sixth Circuit.
Nov. 6, 1930.

C. F. Hille, of Chicago, Ill., for appellant.

J. B. Osmun, of Cleveland, Ohio (Wilfred J. Mahon, of Cleveland, Ohio, on the brief), for the United States.

Before DENISON, MACK, and MOORMAN, Circuit Judges.

DENISON, Circuit Judge.

The United States Commissioner ordered Chin Bow Hon deported to China; and, on appeal, the District Judge affirmed the order.

It appears without dispute, and seems to be conceded, that appellant came from China to San Francisco in 1882, when he was eight years old. He lived in San Francisco and Chicago until about 1892, when, at the age of eighteen, he went to Marquette, Mich., remaining there eight years. He then lived in Chicago for twelve years, and then in Cleveland four years more, until his arrest.

■ The first vital question is as to his status at the registration period in 1893. If he was then a merchant, he was entitled to remain; if a laborer, he was subject to be deported, unless he secured the proper registration certificate. Most of the evidence, pro and con, is relevant to his claim that he was then a merchant. His proofs are direct, and perhaps as convincing as the majority of Chinese testimony in these cases. The proofs for the government tend strongly to show that the alleged store in Marquette, in which he was said to be a partner, was in truth a laundry. The question was one of fact, whether the merchant status was sufficiently established; and we are not justified in overruling the conclusion of the trial judge, who

saw the witnesses and heard the testimony, and accepted the laundry theory.

█ There is another question. Appellant says that in 1893 he and three others, who were claiming to be partners in this Chinese store, applied at the "Post Office" for a certificate of residence, but were informed that, as they were merchants, it was not necessary for them to register. His uncle, a Chinese merchant of experience and intelligence, says that he was in Marquette at the time, being also a partner, and that the four of them went to the place on the second floor of the Post Office in Marquette, where Chinese registered, for the purpose of registering. He said they were asked as to their names, ages, and business, and, on being told that they were the ones carrying on this business in Marquette, the official said, "Not necessary you boys take registration"; and, that being so told, they did not register. If this testimony is true, it presents the necessary excuse for lack of registration. 8 USCA § 287. We see no sufficient reason for not accepting it. True, any one who might have contradicted it is probably unavailable; the only official named, Mr. Moore, is dead; but appellant can hardly be penalized, because, after the government had allowed him for more than thirty years to remain here without objection, it has lost evidence which perhaps might have disputed his claim. Even if the officials involved were living and available, it is highly improbable that they would remember anything about the occurrence.

The reason for accepting the claim is that it seems inherently very probable. This establishment was undoubtedly to some extent a store, even if it was dominantly a laundry; at that time, the question of how much or what business a Chinese person had to do to be a merchant had not been developed; probably neither the deputy collector nor the appellant nor the older Chinese adviser knew whether the facts made it necessary for them to register as laborers; that they should go to the collector and tell him who they were and ask whether they must register was entirely natural; that they should fail to do so and decide to take the risk of their own judgment would have been unnatural. Marquette was a small place; a Chinese store and laundry was then a novelty. The collector would naturally know the general character of the place; and it ought not to be inferred that they made any false representations to him about it. These Chinese persons knew it was their duty to register if they were not merchants; the cost of registration was nothing;

and we think their story is inherently too probable to be rejected as merely an expedient invention.

█ The case as to its general situation is rather extraordinary. There have not been many instances, if any, where it was conceded that the Chinaman had been lawfully in the United States at the period of registration and entitled to a certificate, and yet where he has been later deported. The common case is the one where he claims to have been entitled to a certificate, but his claim is doubtful; and in those cases, the law has been strictly enforced that his excuse for not registering must be complete and perfect. It would be an unfortunate and not very creditable thing that a Chinese person, unquestionably here in 1893 and entitled to register, should be told by some one in apparent authority and upon plausible ground that he need not register, and then thirty-seven years later be deported, solely because he was without the certificate which he should then have obtained.

The order of the District Court will be reversed, and the case remanded for further appropriate proceedings.